UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SJOSTEDT,<br><br>Plaintiff,<br><br>v.<br><br>DITECH FINANCIAL, LLC,<br>CITIMORTGAGE, and JANICE SILVA,<br><br>Defendants. | Civil Action No.: 17-10425 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                    February 21, 2018

**I.    Introduction**

Plaintiff John Sjostedt brings claims against Defendants Ditech Financial, LLC ("Ditech"), Citimortgage, and Janice Silva, relating to his residence at 11 Chapel Hill Drive, Unit No. 5, Plymouth Massachusetts (the "Property"). D. 28.[1] Ditech Financial has filed a motion to dismiss the amended complaint. D. 29. For the reasons stated below, Ditech's motion is GRANTED in part and DENIED in part.

**II.   Factual Allegations**

The Court accepts all non-conclusory facts alleged in the amended complaint, D. 28, as true, Ocasio–Hernández v. Fortuño–Burset, 640 F.3d 1, 12 (1st Cir. 2011), and "draw[s] all

---

[1] In light of the filing of the amended complaint, D. 28, the motion to dismiss the original complaint, D. 24, is DENIED as moot.

1

reasonable inferences in favor of the plaintiff[]." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). Plaintiff John Sjostedt purchased the Property in 2002. D. 28 ¶ 6. At that time, he executed a note and mortgage with ABN Amro Mortgage Group, Inc. to purchase the Property. D. 28-1. Defendant Citimortgage later "acquired an interest" in this note and mortgage in 2007. Id. ¶ 8. In 2014, Sjostedt fell behind on his payments on that note. Id. ¶ 9. Citimortgage granted a loan modification to Sjostedt, which lowered the monthly payment on the note from approximately $700 to $556, and extended the term of note to forty years. Id. ¶¶ 13-16. Because Sjostedt believed that he had obtained a permanent modification with Citimortgage, Sjostedt did not apply for another loan modification. Id. ¶ 17. Sjostedt made the modified payments from 2014 until 2016, when Citimortgage refused to accept his payments. Id. ¶ 18. A customer service representative at Citimortgage told Sjostedt that Citimortgage had been applying Sjostedt's monthly payments towards the outstanding principal on the loan, and not towards a regular payment of principal and interest. Id. ¶ 19. Sjostedt also learned that Citimortgage had been mailing some documents related to his mortgage to an address that was not Sjostedt's mailing address. Id. ¶ 20. In 2016, Sjostedt's note was "transferred" to Ditech, and Ditech informed Sjostedt that "all matters with the loan would carry over from Citimortgage." Id. ¶ 22. Sjostedt attempted to apply for a loan modification with Ditech and sent materials related to that application by fax to Ditech, but Ditech informed Sjostedt that it never received those materials. Id. ¶¶ 23-24. Ditech ultimately denied Sjostedt a loan modification because Sjostedt had not provided information regarding a photo business – notwithstanding that Sjostedt had informed Ditech that he did not have a photo business. Id. ¶¶ 25-26.

On November 7, 2016, Sjostedt received a letter informing him that a foreclosure sale on the Property had taken place on November 7, 2016 and that Janice Silva had purchased the

Property. Id. ¶ 27. On February 2, 2017, Sjostedt received a letter informing him that another foreclosure sale on the Property was scheduled for March 20, 2017, without making any reference to the prior purported foreclosure sale of November 7, 2016. Id. ¶ 28.

### III. Procedural History

On March 9, 2017, Sjostedt filed suit against Ditech, Citimortgage, and Janice Silva in Plymouth Superior Court. D. 1-1 at 1. Sjostedt sought a declaratory judgment resolving whether Ditech had standing to foreclose on the Property, in light of the prior purported sale of the Property to Janice Silva. Sjostedt also brought a quiet title action regarding the Property. In addition, Sjostedt brought two counts of a breach of the covenant of good faith and fair dealing (one against Ditech, and one against Citimortgage); a breach of contract claim; a promissory estoppel claim; and a claim under Chapter 93A. D. 1-1 at 8-12.

On March 15, 2017, Ditech removed Sjostedt's suit to this Court. D. 1. That same day, Sjostedt moved for a temporary restraining order ("TRO") to prevent the scheduled foreclosure sale. D. 4. On March 17, 2017, the Court granted Sjostedt's requested TRO and set a briefing and hearing schedule for his request for a preliminary injunction. D. 10. After a hearing, the Court denied Sjostedt's motion for a preliminary injunction. D. 22.[2] On April 28, 2017, Sjostedt filed an amended complaint. D. 28. Ditech has now moved to dismiss the amended complaint under

---

[2] The Court did so, in part, based upon certain documents produced by Ditech that were not part of the complaint. Here, as is appropriate in considering a motion to dismiss, the Court proceeds exclusively on the basis of the allegations in the amended complaint and the documents attached and/or reasonably incorporated therein. See Rocket Learning, Inc. v. Rivera-Sanchez, 851 F. Supp. 2d 384, 391 (D. Mass. 2012) (declining to consider the record for the preliminary injunction hearing in adjudicating the motion to dismiss).

Fed. R. Civ. P. 12(b)(6). D. 29. After a hearing on the motion, the Court took the matter under advisement. D. 36.[3]

IV. **Discussion**

   A. **Standard of Review**

On a motion to dismiss based upon Rule 12(b)(6), the Court will dismiss a complaint that fails to allege adequate facts "to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In reviewing the complaint, the Court can consider documents attached to or fairly incorporated into the complaint and facts susceptible to judicial notice. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

   B. **Breach of Contract Claim (Count IV)**

      *1. Enforceability of the Contract*

In the amended complaint, Sjostedt alleges that Ditech was bound by the loan modification agreement that Sjostedt had entered into with Citimortgage and breached this contract by not complying with that loan modification agreement. Id. ¶¶ 40-46. Ditech moves to dismiss this claim on the basis that the alleged terms of the contract, even as alleged in the amended complaint, are not sufficiently definite to render the loan modification an enforceable contract. D. 29 at 5. Specifically, Ditech argues that the amended complaint does not specify "the modified interest rate, the modified maturity date, and the amount of the modified payment applicable to principal, interest, taxes and insurance." Id. Sjostedt argues that the specific terms that he did allege with respect to the loan modification – the reduction in the payment level and the extension of the maturity date – are sufficient to create an enforceable contract. D. 31 at 8-9.

---

[3] At the motion hearing, D. 36, Ditech withdrew its motion to dismiss with respect to Sjostedt's Chapter 93A claim so the Court DENIES the motion to dismiss as to that claim.

4

Under Massachusetts law, the "controlling fact" regarding whether a contract was formed is "the intention of the parties." McCarthy v. Tobin, 429 Mass. 84, 87 (1999). "[E]xtreme vagueness" in the contract "not only . . . make[s] its enforcement impossible" but also "indicates that there was no intent to be bound, and thus no agreement, in the first place." Lambert v. Fleet Nat. Bank, 449 Mass. 119, 125 (2007). However, "where a binding agreement has been established, it will not necessarily fail because of the indefiniteness of one or more terms, especially where one party has already performed." Id. (citing Silver v. Graves, 210 Mass. 26, 27 (1911)). Put otherwise, "[a]ll of the essential terms of a contract must be sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained. However, a contract is not to be held unenforceable if, when applied to the transaction and construed in the light of the attending circumstances, the meaning can be ascertained with reasonable certainty." Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 523 (1957) (citations omitted).

Sjostedt alleges that Citimortgage agreed to a lower monthly payment at a forty-year loan term and that he then made that lowered monthly payment for two years before Citimortgage stopped accepting his payments. Id. ¶¶ 13-18. Ditech, in its motion to dismiss, does not address the allegation that Sjostedt partially performed or that Citimortgage allegedly accepted partial performance from Sjostedt. The issue is thus whether, in light of the alleged terms of the contract and the partial performance, the obligations of the parties can be sufficiently ascertained. It has at least been plausibly alleged that the agreement required Sjostedt to make payments of $556 per month for forty years and required Citimortgage to accept those payments as satisfaction of Sjostedt's obligations under the note. Id. ¶ 14-16. While Ditech is correct that the agreement did not specify the modified interest rate or the amount of the modified payment applicable to principal, interest, taxes, and insurance, Ditech does not, at this juncture, provide sufficient reason

to conclude that these terms constitute "essential terms" sufficient to render the contract unenforceable where one party partially performed.

The cases cited by Ditech in support of its argument are not persuasive, because none of them speak to a situation in which two important terms – the new monthly payment and the new maturity date – are alleged. D. 29 at 5-6. First, in Patera v. Citibank, N.A., 79 F. Supp. 3d 1074, 1089 (N.D. Cal. 2015), the plaintiff had only specified a lower monthly payment but no other information and no change was specified that would provide consideration for the loan modification agreement. Second, in In re Salvador, 456 B.R. 610, 619 (Bankr. M.D. Ga. 2011), the agreement did not specify either the new payment amount or the new maturity date – both of which are alleged by Sjostedt here in the amended complaint. Third, in Lambert, 449 Mass. at 124, the plaintiff offered two distinct but vague proposals, neither of which specified either a new monthly payment level or term, and the bank did not indicate the proposal to which it was assenting. Finally, in Senter v. JP Morgan Chase Bank, N.A., 810 F. Supp. 2d 1339, 1350-51 (S.D. Fla. 2011), the loan term was not specified, as it was in the amended complaint here.

### 2.   *Statute of Frauds*

Under Massachusetts law, a change to a mortgage agreement is subject to the statute of frauds and, therefore, is generally unenforceable if not in writing. Metropolitan Credit Union v. Matthes, 46 Mass. App. Ct. 326, 334 (1999). However, as Ditech acknowledges, D. 29 at 7, "[a] plaintiff's detrimental reliance on, or part performance of, an oral agreement to convey property may estop the defendant from pleading the Statute of Frauds as a defense." Nessralla v. Peck, 403 Mass. 757, 761 (1989). Ditech, however, contends that the payments that Sjostedt made under the modified loan agreement cannot constitute detrimental reliance because Sjostedt was already obligated to make payments on the note. D. 29 at 7. Sjostedt contends that the action that he took

in detrimental reliance on Citimortgage's promise to modify the loan is that he did not apply for a different loan modification from Citimortgage, even though Citimortgage had determined that Sjostedt was eligible for a modification. Ditech responded, at the hearing that Sjostedt's detrimental reliance on Citimortgage's statement did not estop Ditech from relying on the statute of frauds, as Ditech was a separate entity from Citimortgage. Ditech, however, cites no authority for this proposition. Generally, under Massachusetts law, "an assignee of contract rights stands in the shoes of the assignor and has no greater rights against the debtor than the assignor had" with respect to the contract. Graves Equipment, Inc. v. M. DeMatteo Const. Co., 397 Mass. 110, 112 (1986). Sjostedt has plausibly alleged that Citimortgage would have been bound by the oral amendment of the contract, and, therefore, that Ditech, as the assignee of the Citimortgage's interest in the contract, would have been bound as well.

Accordingly, for the aforementioned reasons, the Court DENIES Ditech's motion to dismiss Sjostedt's breach of contract claim.

### C. Promissory Estoppel Claim (Count V)

In the amended complaint, Sjostedt alleges a claim of promissory estoppel against both Citimortgage and Ditech on the basis of Citimortgage's promise to modify his loan, upon which Sjostedt detrimentally relied. Id. ¶¶ 47-54. Ditech argues that the amended complaint does not plead facts sufficient to state a claim for promissory estoppel for two reasons: first, that the amended complaint does not allege any representations by Ditech; and second, that the amended complaint does not describe the representation that Citimortgage made to Sjostedt with sufficient specificity and instead "merely recite[s] the elements of estoppel." D. 29 at 8.

As to the first, Sjostedt responds that "[a] promissory estoppel claim is contract based," and that because Ditech is the assignee of or successor to Citimortgage, Ditech is liable for

7

Citimortgage's statements regarding the mortgage. D. 31 at 14-15. Sjostedt also points out that the amended complaint alleges that Ditech represented to Sjostedt that "all matters with the loan would carry over from Citimortgage." D. 28 ¶ 22. Neither Sjostedt nor Ditech provide any authority to support their positions regarding whether an assignee or successor is liable, on a theory of promissory estoppel, for the statements of the assignor or predecessor.

"The common law principle that the assignee stands in the assignor's shoes means only that the debtor can raise the same defenses against the assignee as he could have raised against the assignor. . . . It has never been interpreted to mean that the assignee will be liable for all the assignor's wrongs." Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 545 (1989). The Supreme Judicial Court "reject[ed] the claim that [] liability should be extended to the [] assignee, in light of our determination that neither the contract provision . . . nor G.L. c. 105 § 9-318 puts the assignee in the shoes in the assignor for the purposes of being affirmatively liable for claims which could be brought against the assignor." Id. Thus, because it appears that Sjostedt's promissory estoppel claim is an affirmative claim based not upon the contract (i.e., note transferred from Citimortgage to Ditech) as his breach of contract claim remains, but upon a separate, non-contractual act by Citimortgage, Ditech cannot be held liable for Citimortgage's statements on the basis of the facts alleged in the amended complaint.

Sjostedt's attempt to hold Ditech liable for Citimortgage's alleged statements fares no better on a theory of successor liability. In Massachusetts, "successor liability depends on a transfer of all, or substantially all, assets from predecessor to successor." Premier Capital, LLC v. KMZ, Inc., 464 Mass. 467, 475 (2013). The amended complaint does not contain an allegation that Ditech was the recipient of a transfer of all, or substantially all, of Citimortgage's assets.

Accordingly, the Court ALLOWS Ditech's motion to dismiss Sjostedt's promissory estoppel claim.

### D. Breach of Covenant of Good Faith and Fair Dealing (Count III)

Sjostedt pleads, in the amended complaint, one count of a breach of the covenant of good faith and fair dealing against Ditech, based on Ditech's failure to inform Sjostedt or provide public notice regarding whether the November 2016 foreclosure sale was rescinded. D. 28 ¶¶ 36-39. The amended complaint alleges that Ditech's failure in this regard produced a "chilling effect" on potential buyers, "who now have reason to believe that the home had already been purchased by [] Silva." D. 28 ¶ 38. Ditech moves to dismiss this claim on the ground that Sjostedt did not present a viable contract claim, and because claims of a breach of the covenant of good faith and fair dealing depend on the existence of a contract, Sjostedt's claim necessarily fails. D. 29 at 8-9. Sjostedt responds that the claim against Ditech for the breach of the covenant of good faith and fair dealing is based upon the contractual relationship Sjostedt alleged with Ditech as Sjostedt's loan servicer, regardless of whether the purported loan modification constituted a valid contract. D. 31 at 6. Given this reasonable inference from the allegations in the amended complaint, see D. 28 ¶¶ 27-29, 38, and no compelling argument from Ditech in response, the Court DENIES Ditech's motion to dismiss as to this claim.

### E. Declaratory Judgment Claim (Count I)

Sjostedt also seeks a declaratory judgment. Citing the alleged prior sale to Silva and the subsequent notice that a new foreclosure sale was to occur, Sjostedt seeks "a declaratory judgment as to the ownership of [the Property] and whether [] Ditech has standing and authority to foreclose." Id. ¶¶ 32-33. Ditech moves to dismiss the count, arguing that "Ditech either previously foreclosed and . . . therefore [Sjostedt] would not have standing to assert any claim for declaratory

relief, [] or in the alternative there was a breach in the Memorandum of Sale [to Silva] and therefore as a matter of law Ditech has the right to re-foreclose. In either event [Sjostedt's] rights are not impaired." D. 29 at 9. According to the allegations in the amended complaint, accepted as true at this juncture, there is at least a question as to whether the prior sale to Silva was in fact executed, and, therefore, whether Ditech would have any further standing to execute a new foreclosure sale, and evict Sjostedt from the Property. The amended complaint thus adequately alleges an impairment of Sjostedt's rights sufficient to survive Ditech's motion to dismiss and the Court DENIES the motion as to this claim.

### F. Quiet Title Claim (Count II)

In the amended complaint, Sjostedt asserts a claim for quiet title to the Property. D. 28 ¶¶ 34-35. Such a claim derives not from Sjostedt's possession of the Property (as the declaratory judgment claim appears to do), but from whether he has legal title to the Property. Ditech moves to dismiss this count on the ground that Sjostedt "lacks standing for asserting such a claim." D. 29 at 9. In support of this argument, Ditech cites Oum v. Wells Fargo, N.A., 842 F. Supp. 2d 407, 412 (D. Mass. 2012). In that case, the court explained that, in Massachusetts, "a mortgagor does not in fact hold legal title to the mortgaged property. . . . Rather, the mortgagee holds the legal title. The mortgagor only possesses an equitable title to the property so long as the debt remains unpaid. . . . Thus, a quiet title action is not an avenue open to a mortgagor whose debt is in arrears because, until the mortgage is discharged, the title necessarily remains under a cloud." Id. Even as plead, Sjostedt mortgaged the Property in 2002 and has never paid off the accompanying note or extinguished that mortgage. Thus, Sjostedt does not allege that he holds legal title to the Property and thus does not allege facts sufficient to show that he would be entitled to relief on his quiet title claim. Sjostedt contends that the Supreme Judicial Court abrogated Oum in Abate v.

Fremont Investment & Loan, 470 Mass. 821, 835 (2015). D. 31 at 5. However, Abate did not concern the quiet title action, under Mass G. L. c. 240 § 6, but rather concerned the try title action, under Mass. G. L. c. 240 § 1. Abate, 470 Mass. at 835 (recognizing and analyzing claim under try title statute); Bevilacqua v. Rodriguez, 460 Mass. 762, 767 n.5 (2011) (describing distinction between a quiet title action and try title action). Thus, Abate does not indicate that Oum is incorrect in concluding that a mortgagor cannot prevail in a quiet title action while there is an outstanding mortgage on the property at issue. See Rezende v. Ocwen Loan Servicing, LLC, 869 F.3d 40, 43 (1st Cir. 2017) (noting that "[a] mortgagor lacks standing to bring a quiet title action as long as the mortgage remains in effect"). Accordingly, the Court ALLOWS Ditech's motion to dismiss the quiet title claim.

## V. Conclusion

For the foregoing reasons, Ditech's motion to dismiss, D. 29, is GRANTED as to the promissory estoppel claim and the quiet title claim and DENIED as to the remaining claims.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge